IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHELLE R. MICHENER, | ) | 4:08CV3202 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| BRYANLGH HEALTH SYSTEM, | ) | |
| | ) | |
| Defendant. | ) | |

The plaintiff, Michelle R. Michener ("Michener") was formerly employed as a payroll specialist by the defendant, BryanLGH Medical Center ("BryanLGH"). Her employment was terminated on April 15, 2008, after she had been absent from work for approximately one month. Michener claims that BryanLGH violated the Family Medical and Leave Act ("FMLA"), 29 U.S.C. §2615(a)(1), by interfering with, restraining, or denying the exercise of rights provided by the Act when it terminated her employment. BryanLGH contends that Michener failed to comply with the FMLA by not providing medical certification of her inability to work.

BryanLGH now seeks summary judgment on Michener's claim, and, pursuant to Nebraska Civil Rule 56.1(a), submits that there is no genuine dispute as to the following material facts:[1]

    1. Michelle R. Michener is a resident of Lincoln, Nebraska.

---

[1] Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *Chial v. Sprint/United Management Co.*, 569 F.3d 850, 853 (8th Cir. 2009). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

(Complaint (filing 1), ¶3; Answer (filing 13), ¶2)

2. BryanLGH Medical System and BryanLGH Medical Center are related Nebraska not-for-profit corporations which operate a hospital in the city of Lincoln, Nebraska.  At various times, Michener was an employee of the Medical System and the Medical Center (referred to collectively as "BryanLGH") (Complaint ¶4; Answer ¶2; Anderson Aff. (filing 26-7), ¶3)

3. Michener was employed as a Payroll Specialist in the Payroll Department. (Complaint, ¶3; Answer, ¶2)  Her supervisor was Barbara Brettmann. (Michener Depo. (filing 26-2) 5:19-20)

4. Michener was absent from work on March 10, 2008.  On March 11, she left a voice message at BryanLGH's Employee Health Department stating that she had been off work since March 10 due to an ear infection and the "flu."  She said that she would get whatever paperwork BryanLGH needed concerning her absence.  Tracey L. Johnson, a Case Manager in the Employee Health Department listened to Michener's message on March 12. (Johnson Aff. (filing 26-6), ¶5)

5. Johnson started a Case Progress Notes Report on March 13 which summarized the information concerning Michener's absence and request for leave and her notes concerning her contacts with Michener and others concerning Michener's leave request and employment situation.  (Johnson Aff., ¶6, Att. B)

6. After Johnson's initial contact with Michener, she communicated with Michener by telephone and by e-mail during March and April 2008 concerning her leave status.  Johnson also had regular contact with Brettmann, Michener's supervisor, and she discussed Michener's situation with Ron Anderson, the Director of Employee Relations. (Johnson Aff., ¶6)  Michener also admits that she had contact with Brettmann, Johnson and Anderson about her absence. (Michener Depo. 26:15-18)

7. In March 2008, BryanLGH had a written procedure on "Family and Medical Leave," H.R.A. 93, which outlined the process for

employees to obtain benefits under the Family and Medical Leave Act ("FMLA").[2] (Johnson Aff. ¶4, Att. A)

8. After receiving the initial call from Michener concerning her illness, Johnson reviewed Michener's employment records on March 13 to determine whether she had been employed by BryanLGH for 12 months and had worked at least 1250 hours, and determined that she met the minimum requirements for an employee to be eligible for FMLA leave. That day, Michener left a voice message that her meeting with her physician had been rescheduled to March 17. Johnson made a note to re-evaluate her status on March 18. (Johnson Aff., ¶7)

9. On March 14, Johnson sent Michener a packet of information concerning the FMLA and BryanLGH's Short-Term Disability ("STD") policy. Included in the packet was BryanLGH's standard Health Care Provider Report form.[3] (Johnson Aff., ¶8, Att. C)  On March 14, the

---

[2] The written procedure stated, among other things, that "[Employee Health Services] staff will send Medical Certification Form to the employee which is to be completed by the family member's provider. Employee Health will review requests/medical certification and determine eligibility. Employee Health/Human Resources will notify the employee (via letter) and manager (via email) of approval decision." (Johnson Aff., Att. A (paragraph formatting and numbering omitted), filing 26-6, p. 7)

[3] Johnson's cover letter reads as follows:

Enclosed is a packet of information about Short - Term Disability (STD) and the Family Medical Leave Act (FMLA). If after reviewing it you have any questions please call me.

The first 40 hours of missed scheduled work is not paid by the STD benefit, but the remainder of your medical leave will be automatically included in your bi-weekly paycheck.

I have also enclosed a form titled Health Care Provider Report. Your provider can use this form to document your medical and work status. This form can be returned to me via fax or in the envelope provided.

Employee Health Department also sent Michener a standard FMLA notice.[4]  (Id., ¶8, Attachment D)  Michener received both letters.

---

(Johnson Aff., Att. C, filing 26-6, p. 17)  The "Health Care Provider Report" is not designated "Medical Certification Form" as referenced in BryanLGH's "Family and Medical Leave" procedures, nor is there any other indication that the report pertains to FMLA leave.  The form does not even conform to 29 U.S.C. § 2613(b)(4)(B), which requires certification that "the employee is unable to perform the functions of the position of the employee."  The accompanying information sheet regarding short-term disability benefits specifically instructed Michener that "when a medical absence lasts longer than 24 hours of scheduled work within a 7-day period, you will need to provide medical documentation from your health care provider."  (Id., p. 20)

[4]  The FMLA notice was signed by Ron Anderson, Director Employee Relations.  It reads as follows:

> On 03/12/2008, you notified us of your need to take medical leave due to a serious health condition.  You indicated your leave should begin 03/10/2008.

> This letter is to inform you that you are eligible for leave under the Family Medical Leave Act (FMLA).  The time you are off work related to this absence will be counted toward your annual FMLA entitlement.

> You have a right under the FMLA to receive up to twelve weeks of paid or unpaid leave in a twelve-month period.  According to the regulation, your health benefits must be maintained during your leave.  If you will be using accrued personal time bank (PTB) or short term disability, your premium payments will be paid through payroll deduction, as usual.  If your leave is unpaid, you will need to make arrangements with the Benefits staff in Human Resources to pay your monthly premiums while you are on leave.

> The regulation also requires that BryanLGH must provide job protection for you during your leave (up to twelve weeks).  When you return to work you must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment. If you are unable to return to work within the twelve-week period, job protection

(Michener Depo. 41:24-42:15)

10. Michener gave the Health Care Provider Report form to her physician to complete. (Michener Depo. 43:16-24)  On March 17, Michener called Johnson to discuss her medical condition.  During that conversation, Johnson discussed BryanLGH's FMLA and STD benefits and told Michener that she needed to return the medical documentation in support of her FMLA and STD requests. (Johnson Aff., ¶9)

11. On March 21, Michener left a voice message for Johnson stating that she had left the Health Care Provider Report form at her physician's office and thought someone would call her to get it.  When they did not call her, Michener thought that the form had been sent or faxed to Johnson. (Johnson Aff., ¶10)

12. Sometime after March 14, 2008, Ron Anderson, the Employee Relations Manager, became aware that Michener was absent from work

---

is not guaranteed.  In this event, the Medical Center reserves the right to fill your position.

While on leave, you will be required to furnish periodic reports of your status and intent to return to work.  If the circumstances of your leave change and you are able to return to work earlier than planned, you must notify us at least two working days prior to the date you intend to report for work.  You will be required to present a fitness-for-duty certificate prior to being restored to employment.  If such documentation is not received, your return to work may be delayed until it is provided.

Please feel free to contact Tracey Johnson, RN, CCM, Case Manager, if there are any questions related to this information.

(Johnson Aff., Att. D, filing 26-6, pp. 24-26)  Enclosed with the letter was a poster entitled "Your Rights under the Family and Medical Leave Act of 1993".  Among other information provided, the poster stated that "[a]n employer may require medical certification to support a request for leave because of a serious health condition, and may require second or third opinions (at the employer's expense) and a fitness for duty report to return to work.  (*Id.*, p. 26)

and had not provided any documentation concerning her reasons for her absence. Anderson was contacted by Michener's supervisor, Brettmann, who expressed concern about Michener's absence and the need to have someone in Michener's position in order to complete the work of her Department. Brettmann was also concerned that Michener would not talk with her directly during the workday, but instead was leaving after-hours messages for Brettmann. (Anderson Aff., ¶5)

13. Anderson called Michener's home phone number and left a message on her voice mail in which he asked her not to call Brettmann about her employment situation after work hours. (Anderson Aff., ¶6; Michener Depo. 28:4-24) On or about March 25, Anderson left another voice message for Michener informing her that BryanLGH had not received any documentation concerning her absence and that the hospital needed to fill her position if we did not receive her medical documentation by March 26. Anderson said that they still considered her to be an employee of BryanLGH. (Anderson Aff., ¶6; Michener Depo. 28:22-29:8; 50:22-52:15)

14. On March 25, Johnson received an e-mail message from Michener stating that "I will have the paperwork you/BryanLGH are requesting on 03/31/08. The delay is due to the doctor wanting me to come in regarding my treatment/paperwork." Michener also expressed concern about Anderson's message concerning her absence and the hospital's intention to fill her position after March 26. (Michener Depo. Ex. 5 (filing 26-4)). Johnson responded by e-mail, explaining that Mr. Anderson "is just trying to understand and account for the delay in documentation from your provider, and express the importance of receiving this documentation." (Johnson Aff., ¶11, Att. B; Michener Depo. Ex. 5)

15. On April 2, Michener sent Johnson another e-mail message in which she said that her physician told her "he cannot sign the paperwork because it is after the date and would be illegal for him to sign." Johnson responded by e-mail, explaining that even if Michener's physician could not document her inability to work prior to March 31, "we need him to at least update and document your work status as of your appointment on Monday." (Johnson Aff., ¶12, Att. B) Michener understood that the failure to provide the medical documentation could be a problem.

(Michener Depo. 55:22-56:5)

16. On April 7, Johnson sent Anderson and Brettmann an e-mail message that she had not had any further contact from Michener and had not received any documentation from her medical provider about her condition or work status. (Johnson Aff. ¶13)

17. On April 15, Anderson asked Johnson for an update about communication and documentation from Michener and her provider. Johnson told Anderson that she had not received anything. Anderson said that the time had come to terminate Michener. (Johnson Aff., ¶14; Anderson Aff., ¶8)

18. On April 16, Johnson received another e-mail message from Michener, concerning her medical condition and her plans to have a doctor's appointment on April 22. Johnson had no further contact with Ms. Michener after April 16, 2008. (Johnson Aff., ¶15)

19. Between March 14, 2008, when Johnson first advised Michener of her need to provide medical documentation from her physician in support of her FMLA and STD requests, until Michener's last e-mail message to Johnson on April 16, 2008, Michener did not submit any information from any heath care provider to support her request for medical leave under BryanLGH's FMLA policy. (Johnson Aff., ¶16)

20. On April 15, Anderson prepared a letter informing Michener that her employment was being terminated. The letter stated the primary reason for her termination was "because [of] your lack of communication with us as to what is going on." (Anderson Aff., ¶8, Att. A)

(Defendant's Brief ([filing 27](#)), pp. 3-8 (headings omitted, hyperlinks added).)


Under our local rules, "[t]he party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of

material facts.  The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies.  <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>"  NECivR 56.1(b)(1) (emphasis in original).

Because Michener has not responded directly to BryanLGH's 20-paragraph statement of material facts,[5] they will be treated as established.  These undisputed facts are insufficient, however, to prove that the termination of Michener's employment did not violate the FMLA.

"Because the FMLA was intended to permit 'reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers,' 29 U.S.C. § 2601(b)(2)-(3), employers are entitled to require absent employees to furnish reports on their 'status and intention . . . to return to work' and verification of an employee's claimed need for medical leave.  *Id.* §§ 2613, 2614(a)(5).  They may require certification from a health care provider that 'the employee is unable to perform the functions of [her] position' and will remain unable to work for an estimated period of time due to specific 'medical facts.'  *Id.* § 2613(b)."  *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 991 (8th Cir. 2005).

"In most cases, the employer should request that an employee furnish certification from a health care provider at the time the employee gives notice of the need for leave or within two business days thereafter, or, in the case of unforeseen leave, within two business days after the leave commences."  29 C.F.R. § 825.305(c)

_____

[5] Michener has merely stated her own numbered paragraphs of material facts and interspersed additional facts throughout her brief.

(2008).[6] "[T]he employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." 29 C.F.R. § 825.305(b) (2008).

"An employer must give notice of a requirement for medical certification each time a certification is required; such notice must be written notice whenever required by § 825.301." 29 C.F.R. § 825.305(a) (2008). "[I]f the employer is requiring medical certification . . ., written notice of the requirement shall be given with respect to each employee notice of a need for leave[,]" except that "[s]ubsequent written notification shall not be required if the initial notice in the six-months period and the employer handbook or other written documents (if any) describing the employer's leave policies, clearly provided that certification . . . would be required (e.g., by stating that certification would be required in all cases, [or] by stating that certification would be required in all cases in which leave of more than a specified number of days is taken, . . .)." 29 C.F.R. § 825.301(c)(2) (2008).[7] "At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification." 29 C.F.R. § 825.305(d) (2008).

BryanLGH has failed to establish (1) that it gave Michener written notice that it was requiring medical certification, (2) that it specified a time frame for Michener to provide the certification, or (3) that it advised Michener she would be terminated if she failed to comply with the request for certification. Because of this failure of proof, BryanLGH is not entitled to judgment as a matter of law. *See, e.g., Paulson v. Superior Plating, Inc.*, No. 03-3118, 2004 WL 2203408, at *6 (D.Minn. Sept. 27,

---

[6] This regulation was amended effective January 16, 2009. The prior version applies to this action.

[7] This regulation was also amended effective January 16, 2009.

2004) (finding existence of genuine issue of material fact as to whether employee knew that uncertified absences would lead to termination); *Conrad v. Eaton Corp.,* 303 F.Supp.2d 987, 998-1000 (N.D.Iowa 2004) (even assuming that employee was provided with FMLA summary stating that "medical certification will be required," genuine issues of material fact existed as to whether such notice constituted specific request by employer for medical certification); *Perry v. Jaguar of Troy,* 353 F.3d 510, 514 (6th Cir. 2003) (regulations required employer to ask for medical certification even though employee handbook stated need for certification; without evidence that employer requested certification pursuant to requirements of FMLA, employee's failure to provide certification did not support summary judgment for employer); *Peter v. Lincoln Technical Institute, Inc.,* 255 F.Supp.2d 417, 443 (E.D.Pa. 2002) (employer's failure to provide employee with deadline for providing certification or with notice that she might be terminated precluded entry of summary judgment for employer); *Marrero v. Camden County Bd. of Social Services,* 164 F.Supp.2d 455, 466 (D.N.J. 2001) (even assuming that policies contained employee handbook were sufficient notice that medical certification would be required for FMLA leave, employer was required to inform employee that she had 15 days to provide such certification); *Chenoweth v. Wal-Mart Stores, Inc.,* 159 F.Supp.2d 1032, 1038 (S.D.Ohio 2001) (finding jury question existed as to FMLA interference claim when employer failed to warn employee that she could be terminated for not providing certification); *Washington v. Fort James Operating Co.,* 110 F.Supp.2d 1325, 1332 (D.Or. 2000) (genuine issues of material fact existed as to whether employer adequately notified employee of consequences for failing to submit timely medical certification); *Stubl v. T.A. Systems, Inc.,* 984 F.Supp. 1075, 1087 (E.D.Mich.1997) (employer did not comply with FMLA notice requirements when it failed to specifically inform employee of consequences for failing to provide medical certification before employee took FMLA leave, although employee handbook notified employees of need for certification).

While Michener knew that the "Health Care Provider Report" needed to be completed by her physician and returned to BryanLGH, she does not appear to have

been informed that this was a prerequisite for approval of her FMLA leave.[8]  In fact, Michener was told on March 14, 2008, that she was eligible for FMLA leave, and it also appears that she subsequently received pay stubs which specifically noted her FMLA leave status.[9]  (Michener Aff. (filing 33-9) ¶ 8)  Furthermore, there is no evidence that Michener was warned that her employment would be terminated if the form was not returned by a certain date.[10]  Without such evidence, a jury could

---

[8] The enclosure to the FMLA notice that was sent on March 14, 2008, informed Michener that "[t]he employee *may* be required to provide advance leave notice and medical certification[,]" and that "[t]aking of leave *may* be denied if requirements are not met." (Johnson Aff., Att. D (emphasis supplied))  However, the FMLA notice itself only instructed Michener that "[w]hile on leave, you will be required to furnish periodic reports of your status and intent to return to work." (*Id.*)  Tracey Johnson's letter of the same date indicated that Michener's doctor could use the enclosed Health Care Provider Report "to document your medical and work status." (*Id.*)  During a telephone conversation with Tracey Johnson on March 17, Johnson simply "told Michener that she needed to return the medical documentation in support of her FMLA and STD requests." (Defendant's Statement of Material Facts, ¶ 10)

[9] "Equitable estoppel is available to prevent a company from contesting an employee's right to assert a claim under the FMLA." *Reed v. Lear Corp.*, 556 F.3d 674, 678 (8th Cir. 2009) (citing *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 494 (8th Cir. 2002).  "The principle of [equitable] estoppel declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny the representation." *Id.* (quoting *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 659 (8th Cir.1992)).

[10] On or about March 25, 2008, Ron Anderson left a voice message informing Michener "that the hospital needed to fill her position if we did not receive her medical documentation by March 26.  Anderson said that they still considered her to be an employee of BryanLGH." (Defendant's Statement of Material Facts ¶13)  Michener testified that when Anderson called about opening up her position, he stated that she "was still an employee with full benefits" and that she should "[l]et Tracey or him know when it gets closer to the time that I'll be returning, so they can find me an area to work in." (Michener Depo. 29:4-8)  In response, Michener told Tracey Johnson that she would have the paperwork on March 31 after visiting her doctor.  On April 2, Michener advised Johnson that the doctor would not sign the paperwork

-11-

reasonably conclude that BryanLGH denied or interfered with Michener's rights under the FMLA.[11]

Accordingly,

IT IS ORDERED that the defendant's motion for summary judgment (filing 25) is denied.

August 31, 2009.                    BY THE COURT:

                                    *Richard G. Kopf*
                                    United States District Judge

---

"because it is after the date and would be illegal for him to sign." (Defendant's Statement of Material Facts ¶15) Johnson replied that "we need him to at least update and document your work status as of your appointment on Monday [March 31]" (*Id.*), but did not tell her that the report was needed before April 15. Johnson's email to Michener also stated: "As of today you are still employed with BryanLGH in the Modified Duty cost center. I was unable to authorize Short - Term Disability benefits due to the lack of documentation, so no STD will be in Friday's paycheck." (Johnson Aff. Att. B, filing 26-6, p. 11)

[11] Michener argues in her brief that her failure to provide medical certification was a pretext for her termination, and that the real reason she was fired was that she frequently was absent from work due to medical problems. Michener has not alleged a retaliation claim in her complaint, however.

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.